**In the United States District Court
for the District of Kansas**

**United States of America**,
          Plaintiff,

v.                                                 Case No. 24-10044-01 JWB

**Lori A. Davis**,
          Defendant.

**Sentencing Memorandum**

Lori Davis asks the Court to sentence her to a 1-year term of probation. This sentence is in accordance with the parties' plea agreement, D.E. 26 ¶ 5(d), and is justified by the 18 U.S.C. § 3553(a) factors that the Court must consider when determining a sentence.

**I.    Background**

Lori Davis is a dedicated wife, mother, and grandmother. Her husband John, adult daughter Khalaya, and adult son Brennan describe Ms. Davis as someone who works incredibly hard to provide a safe and loving home for her family, despite their frequent struggles to make ends meet. Ms. Davis helps John out with his flooring business, taking care of the paperwork, bills, and insurance, serving both as his secretary and accountant.

At the same time, Ms. Davis supports Khalaya by taking care of her children (Ms. Davis's grandchildren) whenever they are sick so that Khalaya doesn't miss work. Ms. Davis started working at Genesis Health Clubs, where Khalaya was a manager, in part to help her daughter. Khalaya and her children, who for a long time lived right

across the street, would frequently come to Ms. Davis's house for dinner throughout the week, in addition to the big Sunday night dinners Ms. Davis cooks for the whole family. Her son Brennan lived on his own briefly, but then moved back in with Ms. Davis and the rest of the family when he ran into some trouble, only moving out recently. As Brennan described it, it was a "tight squeeze" in their house with eight people, but his mom always remained supportive. As her husband has explained, he's not sure how she does it all.

The stress and pressure on Ms. Davis increased during the COVID-19 pandemic. Like many parents, Ms. Davis grew frustrated with the way various policies disrupted her children's education. And she ultimately decided to start homeschooling her children. This not only added to Ms. Davis's long list of responsibilities; it also increased her social isolation. Her daughter Khalaya describes her mom as more isolated, quiet, and worried since COVID-19, while before she was active in the community, attending social gatherings on the weekends and more.

Unfortunately, Ms. Davis turned to drinking and increased social media use in an attempt to cope. But both only increased her stress and anxiety. *See* D.E. 29 ¶¶ 55–56 ("To relieve stress, I got on social media and it did not destress me, it made me feel feeling[s] of disappointment in my gov[ernment] entities."). It's from this place that Ms. Davis made the mistakes she did here, not because she ever intended for these threats to be carried out, but because she was making a desperate and misguided plea for more help and support. D.E. 29 ¶ 46 (discussing Ms. Davis's statement that she left the voicemail out of frustration that "she has not been able to get anyone to

assist here with school vouchers or home schooling"); *id.* ¶ 56 ("I am just a lowly, lonely Patriot begging for some attention from my government . . . .").

## II. The 18 U.S.C. § 3553(a) factors support a probation sentence

A probation sentence is sufficient but not greater than necessary to meet the four purposes of sentencing identified in 18 U.S.C. § 3553(a)(2); *see Tapia v. United States*, 564 U.S. 319, 325 (2011) (identifying "retribution, deterrence, incapacitation, and rehabilitation" as "the four purposes of sentencing generally").

### A. Retribution

The first sentencing purpose, "to reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), is more succinctly labeled "retribution." *See Tapia*, 564 U.S. at 325. According to the Sentencing Commission, "[u]nder this principle, punishment should be scaled to the offender's culpability and the resulting harms." U.S.S.G. Ch. 1, Pt. A3.

Here, Ms. Davis left a threatening voicemail and posted similar comments online, and Ms. Davis has taken responsibility for those threats. But in considering the seriousness of the offense, the Court should also consider that Ms. Davis never intended to carry out any threat, and she did not take any steps to carry out any threat. *See* D.E. 26 ¶ 2.

**B. Deterrence**

The second purpose of sentencing is deterrence. 18 U.S.C. § 3553(a)(2)(B). A sentence of probation will provide strong deterrence to Ms. Davis because if she violates her conditions of probation, the Court can impose the statutory penalties for the underlying offense. *United States v. Barwig*, 568 F.3d 852, 855 n.1 (10th Cir. 2009) ("[W]hen a court revokes probation, it may resentence the defendant up to the statutory maximum" of the underlying offense.) Ms. Davis knows that any violation of probation, let alone any additional threats or other criminal conduct, exposes her to a sentence of up to five years in prison.

And then, if the Court revokes Ms. Davis's probation and sentences her to a term of imprisonment, the Court could also impose a term of supervised release of up to three years. This supervision, too, could be revoked, subjecting Ms. Davis up to another two years on each revocation. Together, a sentence of probation provides significant deterrence to Ms. Davis.

**C. Incapacitation**

The third sentencing factor, incapacitation, is concerned with "protect[ing] the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Probation sufficiently serves this purpose for the following reasons.

First, the conduct at issue here were isolated instances of behavior. Ms. Davis has very little criminal history—just three convictions, none of which score under the Guidelines, and two of which were juvenile offenses from 28 and 25 years ago. D.E. 29 ¶¶ 69-70. The third conviction, a failure to appear, stemmed from a citation for a

4

failure to license their dog with the city of El Dorado. *See* D.E. 29 ¶ 71. Ms. Davis recalls dealing with pregnancy complications during this time that impacted her ability to appear in court, and she appeared a few weeks later, paying the underlying fine and court costs.

And the offense conduct here ended on January 12, 2024, nearly 20 months ago. There are no allegations of additional threatening behavior in the 4 months between this date and May 16, 2024, the day of Ms. Davis's arrest following her indictment. And Ms. Davis has been on pretrial release for the past 15 months with no further threatening behavior or other criminal conduct. Thus, a sentence of imprisonment is not necessary to protect the public from any future crimes of Ms. Davis because of the unlikelihood of such crimes.

Additionally, in considering both deterrence and incapacitation, the Supreme Court has recognized that "self-motivated rehabilitation" "lends strong support to the . . . conclusion that [a defendant] is not going to return to criminal behavior and is not a danger to society." *Gall v. United States,* 552 U.S. 38, 57 (2007) (citing to 18 U.S.C. § 3553(a)(2)(B) (deterrence) and (C) (incapacitation)).

Here, Ms. Davis has engaged in significant "self-motivated rehabilitation" in the 20 months since her offense conduct ended. For example, in March 2024, before she was indicted, she renewed her Certified Nurse Aid (CNA) and Home Health Aid certifications. *See* D.E. 29 ¶ 105.[1] She initially received these certifications in 2005,

---

[1] The PSR accurately notes that these certifications have a current "inactive" date of March 29, 2026. Because these certifications must be renewed every two years, an "inactive" date of March 29, 2026, means that Ms. Davis renewed them on March 29, 2024. *See* Kansas Department for Aging & Disability Services, *Kansas Nurse Aide and Home Health Aide Information*,

5

but they had lapsed in the many years where Ms. Davis was primarily a stay-at-home mom. But Ms. Davis recognized that working as a CNA was a missing positive influence in her life. Importantly, working as a CNA "allows her to help others in a meaningful way." D.E. 29 ¶ 113. This sense of purpose, as well as more social interaction and higher wages, are all benefits of Ms. Davis renewing her CNA certifications. And because financial stress and social isolation contributed to Ms. Davis's conduct here, by renewing these certifications, Ms. Davis was taking an important rehabilitative step. Prior to being indicted, Ms. Davis also significantly reduced her drinking, another contributing factor to Ms. Davis's conduct. D.E. 29 ¶ 56.

Additionally, after years of homeschooling her children, Ms. Davis has recently re-enrolled all but her 16-year-old daughter back into public schools. Although Ms. Davis enjoyed homeschooling her children, she has recognized this was adding additional financial and other stress into her life, as well as increasing her social isolation. Ms. Davis reports that in the few weeks that her younger daughters, Gabrelle and Sophia, have been back in school, she can already tell that they each have amazing teachers. This rehabilitation, some of which occurred before Ms. Davis was indicted, shows that deterrence and incapacitation are sufficiently served by a sentence of probation.

Finally, there are many conditions, including those recommended in the PSR, D.E. 29 ¶¶ 132–156, that will ensure the public's protection. For example, the USPO recommends that Ms. Davis be required to participate in the cybercrime management

---

https://www.kdads.ks.gov/home/showpublisheddocument/1486/638521519504900000, (last visited Sept. 1, 2025).

program, which would require her to have monitoring software on any phones or internet-capable devices. Because all the conduct here occurred via phone and the internet, these conditions will be particularly effective in ensuring that the public will be protected from any future crimes of the defendant because it will (1) serve as strong deterrent against additional threats since Ms. Davis knows her devices are monitored, and (2) allow for early intervention if it appears there are additional issues. The condition that Ms. Davis abstain from the use of alcohol and other intoxicants and that she participate in an approved program for substance use, D.E. 29 ¶ 156, will also help protect the public from any future crimes because, as Ms. Davis explained when she was interviewed by federal investigators, her conduct here occurred during a period when she was drinking heavily. D.E. 29 ¶¶ 56, 100.

Even though we are asking for a sentence that does not include a term of imprisonment, this does not mean that Ms. Davis's sentence would not be incapacitating. Many of the conditions the Court could impose—particularly the search condition, the cybercrime management conditions, and travel restrictions—have incapacitating effects and would work a significant restriction on her liberty. Together, these conditions would protect the public.

### D. Rehabilitation

The fourth purpose of sentencing is rehabilitation, 18 U.S.C. § 3553(a)(2)(D), though rehabilitation can never provide a basis for increasing a sentence, *see* 18 U.S.C. § 3582(a); *Tapia*, 564 U.S. at 332 ("Section 3582(a) precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation.").

Under this purpose, the Court is to consider how the sentence will "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3582(a)(2)(D).

Ms. Davis's rehabilitation is best served by a sentence of probation. As described above, Ms. Davis has already taken some important steps in her rehabilitation. With the additional resources, support, and structure that being on probation can provide, such as substance use and mental health treatment, Ms. Davis will be able to continue and strengthen her rehabilitation.

Respectfully submitted,

s/ Ellen Albritton
ELLEN ALBRITTON
Sup. Ct. No. 28978
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6170
Fax: (316) 269-6175
E-mail: ellen.albritton@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court on September 3, 2025, by using the CM/ECF system, which will send a notice of electronic filing to the following:

Lanny Welch
Assistant United States Attorney
Lanny.Welch@usdoj.gov

s/ Ellen Albritton
ELLEN ALBRITTON, #28978